## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RICHARD DEAN**                                    **CIVIL ACTION**


**VERSUS**                                          **NO: 23-3416**


**JPMORGAN CHASE BANK,**
**N.A. ET AL.**                                     **SECTION: "H"**


### ORDER AND REASONS

Before the Court is Defendant JP Morgan Securities LLC's Motion to Compel Arbitration (Doc. 8). For the following reasons, Defendant's Motion is **GRANTED**.


### BACKGROUND

This case arises out of losses Plaintiff Richard Dean, as Trustee of the Malaga 2 Trust, alleges were caused by Defendants JP Morgan Chase Bank, N.A. ("JPMCB"); J.P. Morgan Securities, LLC ("JPMS"); Aundeah Kearney; Mauricio Zamaripa; and Deatra Lee's alleged negligence and breach of contract. Plaintiff, acting in his capacity as the trustee of an "irrevocable confidential Delaware trust known as 'The Malaga 2 Trust'" ("the Trust"), opened an investment account with Defendants JPMCB and JPMS. Plaintiff alleges that he provided Defendant Kearney, "a Private Client Advisor of defendants JPMB and JPMS," with the Trust's mailing address and his personal residential address, along with other information. Plaintiff avers,

1

however, that he "specially advised defendant Kearney that [he] does not receive mail [at his residential address] and that the resident does not have a mailbox."[1]

In December 2021, Plaintiff alleges that he "attempted to execute an online transaction in securities through the account and discovered that the account had been locked and restricted from trading."[2] After notifying Defendants that he had been locked out, Plaintiff was advised that the account was locked out because mailings had been sent by Defendants to his residential address and returned as undeliverable. Plaintiff alleges that he submitted an address change request, but the address was not corrected. After a series of communications between Plaintiff and Defendants, the restrictions on Plaintiff's account were removed on February 2, 2023.[3] Because Plaintiff was unable to make investment transactions that he otherwise would have made during this period, he asserts entitlement to the income and gains that the Trust would have otherwise received but for Defendants' errors and omissions.

Plaintiff filed suit in the Civil District Court for Orleans Parish, and Defendants removed on August 14, 2023. Now before the Court is Defendant JPMS's Motion to Compel Arbitration. Plaintiff opposes.[4]

## LEGAL STANDARD

The question of arbitrability is governed by the Federal Arbitration Act ("FAA"), which broadly applies to any written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a

---

[1] Doc. 1-1 at 4.

[2] *Id.*

[3] *Id.* at 9. Plaintiff further alleges that he was not notified of the restriction removal until March 20, 2023.

[4] Doc. 9.

controversy thereafter arising out of such contract or transaction."[5] A two-step analysis governs whether parties should be compelled to arbitrate a dispute.[6] The Court must first determine whether the parties agreed to arbitrate the dispute.[7] This determination involves two separate inquiries: (1) whether there is a valid agreement to arbitrate between the parties, and, if so, (2) whether the dispute in question falls within the scope of that agreement.[8] Both inquiries are generally guided by ordinary principles of state contract law.[9] The strong federal policy favoring arbitration applies "when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope," but it does not apply "when determining whether a valid agreement exists."[10] If the Court finds the parties agreed to arbitrate, it must then proceed to the second step of the analysis and consider whether any federal statute or policy renders the claims non-arbitrable.[11]

## LAW AND ANALYSIS

Defendant moves this Court to order arbitration and dismiss Plaintiff's claims against all defendants because his claims fall within the scope of a valid arbitration agreement. Plaintiff responds only that "Defendants cannot show the existence of a valid agreement to arbitrate between the parties."[12]

### 1. Agreement to Arbitrate

The General Terms and Conditions, which apply generally to all of Plaintiff's accounts with Defendant JPMS, provide that "[b]y signing the

---

[5] Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).
[6] JP Morgan Chase & Co. v. Conegie *ex rel.* Lee, 492 F.3d 596, 598 (5th Cir. 2007).
[7] Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th Cir. 2004).
[8] Sherer v. Green Tree Servicing LLC, 548 F.3d 379, 381 (5th Cir. 2008).
[9] *See* First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995).
[10] *Sherer*, 548 F.3d at 381.
[11] Primerica Life Ins. Co. v. Brown, 304 F.3d 469, 471 (5th Cir. 2002).
[12] Doc. 9 at 1.

Application and agreeing to the Booklet, which applies to any GPMS accounts You open now or in the future," the parties agree to a "pre-dispute arbitration clause."[13] The arbitration agreement provides in pertinent part that:

> [A]ll controversies arising under or relating to this Agreement or any activity between You or [J.P. Morgan Securities LLC (JPMS)] and its principals, agents or affiliates, its predecessors and any of its respective successors, assigns, and any of its directors, employees, and any other control persons and any of their agents regarding Your Account(s) including, but not limited, orders, transactions, performance or breach of other agreements between the parties shall be resolved through arbitration. This arbitration agreement extends to any agreements and activities performed before and after the opening of Your Account(s).[14]

Ordinary principles of state contract law apply to the determination of whether parties formed a valid arbitration agreement.[15] Under Louisiana law, a contract is formed by consent of all parties.[16] Acceptance of an arbitration agreement need not include a signature, and conduct alone "may show the effect or validity of the agreement."[17] Even so, Plaintiff electronically signed an "Account Application," which incorporates the "Terms and Conditions Booklet."[18] The Terms and Conditions Booklet includes the arbitration provision at issue.[19]

Plaintiff only responds that "there is no way for this Court to determine with any degree of certainty the existence of an arbitration clause connected to

---

[13] Doc. 8-4 at 3 & 11.

[14] *Id.* at 12.

[15] Am. Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 537–38 (5th Cir. 2003).

[16] Chase Bank USA, N.A. v. Leggio, 999 So. 2d 155, 159 (La. App. 2d Cir. 2008) (citing LA. CIV. CODE art. 1927).

[17] *In re* Succession of Taravella, 734 So. 2d 149, 151 (La. App. 5 Cir. 1999). "Consent to a contract may be implied by the action of the parties." Reed v. Flame Petroleum, Inc., 469 So. 2d 1217, 1218 (La. App. 1 Cir. 1985).

[18] *See* Doc. 8-2; Doc. 8-3 at 8 (electronic signature dated September 17, 2021).

[19] *See* Doc. 8-4 at 11–12.

[Plaintiff's] signature, much less whether the Booklet submitted by defendant is a booklet provided to him."[20] This Court, however, is satisfied that Plaintiff agreed to arbitrate his claims pursuant to the arbitration agreement. First, in the space immediately preceding the signature block that Plaintiff electronically signed is a statement in bold that "The Booklet contains a pre-dispute arbitration clause at Section II, Paragraph 23 on page 6."[21] The arbitration clause cited by Defendants is indeed found in Section II at Paragraph 23 of the Booklet attached to Plaintiff's Motion to Compel Arbitration.[22] Second, both the Application and the Booklet bear the same "DocuSign Envelope ID" number, indicating that the two documents were presented together in an electronic "envelope" to Plaintiff together when he signed them on September 17, 2021.[23] Plaintiff does not contest that he signed the Application or that the Booklet was attached thereto. Accordingly, this Court finds a valid agreement to arbitrate.

### 2. *Scope of Agreement*

Having found that there is a valid arbitration agreement, the Court next considers whether Plaintiff's claims fall within the scope of such agreement. Plaintiff fails to dispute that his claims against Defendants fall within the scope of the arbitration agreement. Plaintiff asserts various negligence and breach of contract claims against Defendants for their failure to enter the correct mailing address into the Trust's account profile, failure to correct the inaccurate information, and failure to lift restrictions on Plaintiff's account

---

[20] Doc. 9 at 2.

[21] Doc. 8-3 at 8.

[22] Doc. 8-4 at 11. In connection with the Application and Booklet attached to Defendant JPMS's motion to compel arbitration, Defendant Aundeah Kearney submitted a declaration, certifying that the documents are true and correct copies of the documents provided to Plaintiff. *See* Doc. 8-2.

[23] *See generally* Doc. 8-3 (bearing DocuSign Envelope ID: 172E3FFA-1656-4C2D-A81C-31EF56ABD9 at the top, left corner of each page); Doc. 8-4 (same).

after being apprised that the account had been improperly locked and restricted.[24] Because the arbitration agreement governs disputes relating to any activity between Plaintiff and JPMS—including its agents, directors, or employees—regarding Plaintiff's account, the Court finds that this dispute is within the scope of the arbitration agreement. Further, Plaintiff has not identified any federal statute or policy that renders his claims non-arbitrable. Accordingly, this Court finds that Plaintiff's claims should be referred to arbitration.

### 3. *Dismissal or Stay*

The FAA provides that "upon being satisfied that the issue involved in [a] suit or proceeding is referable to arbitration under such an agreement, [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."[25] While this provision clearly contemplates a stay, Defendants have requested dismissal. District courts have discretion in deciding whether to dismiss cases in favor of arbitration under 9 U.S.C. § 3.[26] The Fifth Circuit has held that "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."[27] Defendant, however, fails to address whether "[a]ny post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy [and] would be circumscribed to a judicial review of the arbitrator's award in the limited

---

[24] *See* Doc. 1-1 at 9–11.
[25] 9 U.S.C. § 3.
[26] Fedmet Corp. v. M/V BUYALYK, 194 F.3d 674, 676 (5th Cir. 1999) (citing Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992)).
[27] *Alford*, 975 F.2d at 1164 (citations omitted).

manner prescribed by law."[28] Accordingly, Plaintiff's claims must be stayed pending resolution of the arbitration proceedings.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Compel Arbitration is **GRANTED**. The parties are compelled to arbitrate this dispute in compliance with the terms of the agreement. This matter is **STAYED** and **ADMINISTRATIVELY CLOSED** pending arbitration.

New Orleans, Louisiana this 2nd day of April, 2024.

_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[28] *See id.* (quoting Seal-Land Serv., Inc. v. Seal Land of P.R., Inc., 636 F. Supp. 750, 757 (D. Puerto Rico 1986)).

7